UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-21530-CIV-O'SULLIVAN

[CONSENT]

RICARDO AIRA and all other[s]
similarly situated pursuant to 29 U.S.C. 216(b),

        Plaintiffs,

vs.

BEST NATIONAL VENDING, INC.,
WILFREDO J. RODRIGUEZ,

        Defendants.
_____/

## ORDER

THIS MATTER is before the Court pursuant to the Defendants' Motion for Final Summary Judgment and Incorporated Memorandum of Law (DE# 39, 7/16/12) and the Plaintiff's Motion for Partial Summary Judgment (DE# 45, 7/25/12). Having reviewed the applicable filings and the law, it is

ORDERED AND ADJUDGED that the Defendants' Motion for Final Summary Judgment and Incorporated Memorandum of Law (DE# 39, 7/16/12) is GRANTED. The defendants are entitled to final summary judgment on the plaintiff's FLSA overtime claim in his single-count complaint based on the Motor Carrier Act exemption. It is further

ORDERED AND ADJUDGED that the Plaintiff's Motion for Partial Summary Judgment (DE# 45, 7/25/12) is DENIED.

## BACKGROUND

The plaintiff filed his Complaint under 29 U.S.C. 201 - 216 Overtime Wage

Violation (DE# 1, 5/2/12). The single-count complaint seeks recovery of unpaid overtime wages in violation of 29 U.S.C. § 207 (Count I). See Complaint (DE# 1, 5/2/12).

**1.    Motion for Summary Final Judgment**

On July 16, 2012, the defendants filed Defendants' Motion for Final Summary Judgment and Incorporated Memorandum of Law (DE# 39, 7/16/12) and the Defendants' Local Rule 56.1 Statement of Material Facts (DE# 41, 7/16/12). In support of their motion for summary judgment, the defendants filed the following documents:

1. The U.S. Department of Labor's Wage Hour Opinion Letter No. 797, May 1, 1968 (DE# 39-1, 7/16/12); Correct Exhibit A (DE# 44-1, 7/16/12)

2. Defendants' Notice of Filing (DE# 42, 7/16/12): Deposition of Ricardo Aira Vazquez dated October 10, 2011 ("Aira Depo.") and Deposition of Wilfredo J. Rodriguez dated October 12, 2011.

3. Affidavit of Wilfredo J. Rodriguez ("Rodriguez Affidavit") (DE# 41-1, 7/16/12)

4. Plaintiff's Response to Request for Admissions ("Admissions Response") (DE#41-3, 7/16/12)

5. Defendants' Initial Disclosures (DE# 41-5, 7/16/12)

6. Defendants' Response to Request for Production (DE# 41-6, 7/16/12).

The plaintiff filed a cross-motion for partial summary judgment asserting that the defendants are not entitled to claim the Motor Carrier Exemption. See Plaintiff's Motion for Partial Summary Judgment (DE# 45, 7/25/12)  The plaintiff also filed a response to the defendants' motion for summary judgment. See Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (DE# 47, 7/30/12). In opposition to the defendants' motion and in support of his own motion, the plaintiff filed the following

documents:

1. Affidavit of Donald Mark Rogers (DE# 46-1, 7/25/12) (DE# 48-4, 7/30/12)

2. Affidavit of Michael Holland (DE# 46-2, 7/25/12) (DE# 48-3, 7/30/12)

3. Affidavit of David Lorenzo (DE# 46-3, 7/25/12)  (DE# 48-2, 7/30/12)

4. Affidavit of Ricardo Aira (DE# 48-1, 7/30/12)

 EDIT FACTS

## **FACTS**

Best National Vending, Inc. ("Best National") is a vending operator located in Doral, Florida.  Best National is responsible for maintaining vending machines for customers in Miami-Dade County and surrounding areas.  The plaintiff is a route driver for Best National.  Each day, and at least once per week, each route driver visits the Best National retail customers' vending machines on his assigned route. Aira Depo. at 23:4-6; Rodriguez Affidavit at ¶ 4.  Route drivers are responsible for filling up their trucks with the vending machine products, such as chips, candy and soda, that are necessary to fill up the customers' vending machines. Aira Depo. at 22:24-25; 23:1-3; 33:7-14; Plaintiff's Response to Defendants' First Request to Admit to Plaintiff (hereinafter "Admissions Response") No. 4. The plaintiff then drives the truck to various customer locations where he stocks the machines while conducting an inventory of the vending items from a handheld computer device or hand writes a list to determine which vending items he will need in order to properly fill the machines during his next visit to the customer.  Rodriguez Affidavit at ¶ 4; Aira Depo. 22:24-25; 23:1-9; 24:10-19; Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary

Judgment (DE# 48, 7/30/12) at ¶ 12.

Most of the products that Best National receives from its vendors are manufactured, procured and shipped from outside the State of Florida.  Rodriguez Affidavit at ¶ 3; Aira Depo at 33:15-21; Admissions Response No. 6.  Best National places weekly orders from its vendors. Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 48, 7/30/12) at ¶ 13.  Once at Best National's warehouse, the vending items are unloaded into the warehouse and the route drivers then load their trucks.  Id.; Aira Depo. at 22:24-25; 23:1-3; 33:7-14; Aira Affidavit at ¶ 16.

The plaintiff worked for the defendants from January 7, 2008 into 2011. Defendants' Response to Plaintiff's Statement of Material Facts [ECF No. 46] in Support of His Motion for Partial Summary Judgment (DE# 53, 8/27/12).   As a route driver, the plaintiff operated a commercial motor vehicle that weighed more than 10,001 pounds. Aira Depo. at 33:3-6; Admissions Response No. 1; Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 48, 7/30/12) at ¶ 21.  The plaintiff operated a commercial motor vehicle on the public roads and highways in the State of Florida. Aira Depo. at 23:10-15;  Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 48, 7/30/12) at ¶ 22.  Best National and its trucks are registered with the Florida Department of Transportation.  Defendants' Rule 26(a)(1) Initial Disclosures at II.C; Defendants' Response to Plaintiff's First Request for Production at Nos. 4, 8, and 25.

## **STANDARD OF REVIEW**

**Motion for Summary Judgment**

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  That is, "[t]he moving party bears 'the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994).  Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be

mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-23. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

## ANALYSIS

### I. Motor Carrier Act Exemption re: Federal Overtime Violation Claim

The defendants claim they are entitled to summary final judgment on the plaintiff' federal overtime violation claims because the plaintiffs are subject to the Motor Carrier Act (hereinafter "MCA") exemption. See Defendants' Renewed Motion for Summary Final Judgment (DE# 93 at 12-15, 8/10/09). In his response in opposition and its cross-motion for partial summary judgment, the plaintiff responds that the MCA exemption is inapplicable in the instant case because: 1) the defendants cannot show that they did not buy goods from suppliers who sold the goods from warehouse storage located

within Florida that was neither earmarked for the defendants or their customers; and 2) the defendants cannot show that the products ordered from out of state vendors and delivered by the plaintiff remained within the continuous stream of interstate travel for the purposes of the MCA exemption.  See Plaintiff's Motion for Partial Summary Judgment at 4 (DE# 45, 7/25/12).

Exemptions to the FLSA are narrowly construed against the employer. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008).The MCA exemption is found in Section 213(b)(1) of the FLSA and provides that the FLSA's overtime provision, section 207, does not apply "to any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." Alvarado v. I.G.W.T. Delivery Systems, Inc., 410 F.Supp. 2d 1272 (S.D. Fla. 2006). The Eleventh Circuit explained that "[t]he Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180, 181-182 (11th Cir. 1991)(citing 29 C.F.R. § 782.2(a)); see Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37, 43 (5th Cir. 1962) (holding that driver helpers who load and unload cargo affect the safety of the vehicle and are exempt from the overtime provisions of the FLSA).

The defendants seek summary judgment on the ground that the plaintiff's position as a vending machine route driver is exempt from overtime compensation under the MCA exemption.  Defendants' Motion for Final Summary Judgment and Incorporated Memorandum of Law at 1 (DE# 39, 7/16/12).  The plaintiff is a vending route driver for the defendants.  The plaintiff drove a truck that weighed more than 10,001+ pounds on highways and thus affected the safety of the operation of motor vehicles. See Aira Depo. at 23:10-14 (DE# 39, Ex. B); Aira Affidavit ¶ 22 (DE# 48-1, 7/30/12). Most of the products in the defendants' vending machines were manufactured outside the state of the Florida. See Affidavit of Wilfredo J. Rodriguez at ¶ 3 ("W. Rodriguez Affidavit") (DE# 41-1, 7/16/12) ("The vast majority of products that Best National receives from its vendors are manufactured, procured and shipped from out of the state of Florida ...."); Plaintiff's Response to Defendants' First Request to Admit to Plaintiff, Response to Request No. 6 (DE# 41-3, 7/16/12) ("Some of the goods that Plaintiff loads onto his Best National vehicle and transports are delivered from warehouses located outside of Florida. Response: Admitted that products originated from outside the state of Florida."); Aira Depo. at 33:18-25; 34:1-2 (DE# 41-2, 7/16/12). Once orders were placed, the vendors ship to the defendant's warehouse via common carrier. Upon arrival, the vending items were unloaded into the defendants' warehouse and the route drivers then load their trucks with the items they need to fill their specific customers' vending machines.  Typically, the products arrived within 1-2 days after the orders were placed. See W. Rodriguez Affidavit at ¶ 5 (DE# 41-1, 7/16/12). In his deposition, the plaintiff admitted that every week the defendant buys the vending products from its vendors.  Aira Depo. at 33:15-17 (DE#41-2, 7/16/12).  Given their

perishable nature, the vending products remain in the defendant's warehouse temporarily, pending processing, until ultimately being delivered to the defendant's vending machine customers. See W. Rodriguez Affidavit at ¶ 6 (DE# 41-1, 7/16/12); Aira Depo. at 34:2-21 ("... I don't know how long [the goods are] in [the defendant's warehouse]...."). The plaintiff drove the truck to the customer sites daily to fill the vending machines and to remove perishable items. Aira Depo. at 23:4-19; 24:4-9 (DE# 41-2, 7/16/12).

      The crux of the plaintiff's argument is that the products that are sitting within an in-state vendor warehouse prior to the time an order is placed and shipped to the defendants do not evidence the requisite fixed and persistent intent to trigger the MCA exemption. See Plaintiff's Reply to Response to Motion for Partial Summary Judgment (DE# 60, 9/4/12). The plaintiff argues that the MCA exemption does not apply to the defendants because the defendants cannot prove that "the products ordered from out of state vendors and delivered by Plaintiff remained within the continuous stream of interstate travel." Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (DE# 47, 7/30/12). The plaintiff further argues that several of the defendants' key suppliers would ship product from warehouses they owned within the State of Florida. Id. at 6 (citing Rogers Affidavit at ¶ 6; Holland Affidavit at ¶ 6; Lorenzo Affidavit at ¶ 6). The plaintiff contends that the products of these key suppliers could remain in the in-state Florida warehouses for weeks or months and up to a year at a time before being shipped to the defendants to fulfill the defendants' orders. The plaintiff argues that such delay exceeds the temporary periods or brief pauses considered by Mena and Vitola and that the product has been removed from the

continuous stream of commerce under Walters.

### A. Continuous Stream of Interstate Commerce

The issue before the Court is whether the plaintiffs were engaged in the transportation of goods in interstate commerce. See Walling v. Jacksonville paper Co., 317 U.S. 564, 568 (1943) (finding that the interstate commerce requirement is satisfied if the goods being transported within the borders of one state are involved in a "practical continuity of movement" in the flow of interstate commerce); Chao v. First Class Coach Co., Inc., 214 F. Supp. 2d. 1263, 1272 (M.D. Fla. 2001)(purely intrastate transportation can constitute part of interstate commerce if it is part of a "continuous stream of interstate travel.").

In Jacksonville Paper, the Supreme Court analyzed whether goods bought by a wholesaler in interstate commerce for sale and distribution to in-state retailers, and temporarily stored in a warehouse before distribution to retailers remained in interstate commerce. The Jacksonville Paper Court discussed the following three scenarios: 1) where the goods were ordered pursuant to a preexisting contract between the retailer and shipper; 2) where the goods were ordered by the wholesaler/distributor to meet the needs of specified customers pursuant to some understanding with the customers; and 3) where the goods were ordered based on anticipation of the needs of specific customers. Id. At 568-70. The Supreme Court held that goods falling within the first and second categories remained in interstate commerce because the contract or understanding pursuant to which the goods were ordered indicates where it was intended that the interstate movement should terminate. Id. at 569. The defendant

argues that it falls within the first two categories because it orders its products pursuant to preexisting agreements with its vendors to meet the particular needs of specified customers based upon the inventories taken by the route drivers such as the plaintiff.

The defendants rely on this Court's decision in Vitola v. Paramount Automated Food Servs., Case No. 08-61849-CIV-O'Sullivan, 2009 WL 3242011 *30-31 (Oct. 6, 2009), which relied on Jacksonville Paper, and determined that vending goods transported entirely within the borders of Florida by vending machine route drivers remained in interstate commerce despite the out of state goods' pause at the distributor's warehouse. In Vitola, the Court relied on the fact that goods did not remain in storage or in inventory pending receipt of customer orders and were quickly placed into the vending machines where they were ultimately purchased by customers. Id. at *26. The Vitola Court held that the MCA exemption applied and granted summary judgment in favor of the defendant.

Similarly, in the present case, the majority of the perishable products that the defendant receives are manufactured, procured and shipped from out-of-state. The route drivers then deliver the goods by motor carrier trucks to various in-state customers. See Statement of Material Facts at ¶¶ 14-15 (DE# 39). As in Vitola, none of the plaintiff's routes cross state lines. Id. at ¶ 7. The perishable products that the defendant orders on a weekly basis and receives from its vendors remain only temporarily at the defendant's warehouse before being delivered based on a previously-placed and earmarked order for particular customers. Id. at ¶¶ 11, 13,17, 18. Like Vitola, the products from the defendant's warehouse are transported by the plaintiff to select destinations and customers rather than remaining in storage for customers yet to

11

be determined.  Id. at ¶ 13.

In Walters v. American Coach Lines of Miami, Inc., 575 F.3d 1221, 1229 (11th Cir. 2009), the Eleventh Circuit held that "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate commerce.'" Under Walters, a "practical continuity of movement" must exist between the intrastate segment and the overall interstate flow.  Id.  In Walters, the Eleventh Circuit upheld the summary judgment in favor of the employer because the transportation of cruise passengers from their exotic points of departure and ports of call, to the cruise ships and back home again by the bussing company was considered an essential component of the passengers overall transportation. Id.  The shipper's "'fixed and persisting intent' at the time of the shipment" is a critical factor in determining the shipment's essential character.  Mena v. McArthur Dairy, LLC, 352 Fed. Appx. 303, 306 (11th Cir. 2009) (citing 29 C.F.R. § 782.7(b)(2); Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 223-24 (2d Cir. 2002)).

In Mena, the Eleventh Circuit rejected the rigid standard in Baird v. Wagoner Transp. Co., 425 F.2d 407, 411 (6th Cir. 1970) and followed other circuits which hold that "a fixed and persisting intent" is determined "from all of the facts and circumstances surrounding the transportation." Mena, 352 Fed. Appx. at 306, n.2 (quoting Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Interstate Commerce Comm'n, 921 F.2d 904, 908 (9th Cir. 1990)(citations omitted)).  Under Walters, the Eleventh Circuit is "'guided by practical considerations' when determining whether an employee's activities are part of the interstate commerce for the purposes of the FLSA." Id. (citing Walters, 575 F.3d at 1221).  In Mena, the Eleventh Circuit found that most of

the property (i.e. dairy and other refrigerated products) that Mena transported was previously manufactured in other states and delivered to McArthur Dairy's Miami warehouse. Then McArthur Dairy distributed the products to its "customers based on standing orders and customers' projected needs, as calculated by the customers' past purchases." Id. at 307. The Eleventh Circuit concluded that "[u]nder these circumstances, McArthur's warehouse was nothing more than a temporary storage hub used to facilitate the orderly distribution of products through interstate commerce." Id. The "transportation of these products was part of the 'practical continuity of movement' across state lines." Id.

The defendants cite to an opinion letter from the Wage and Hour Administrator dated May 1, 1968 (hereinafter "Opinion Letter No. 797"). See The U.S. Department of Labor's Wage Hour Opinion Letter No. 797, May 1, 1968 (DE# 39-1, 7/16/12); Correct Exhibit A (DE# 44-1, 7/16/12). The opinion letter states, in part, as follows:

> It is the position of the Wage and Hour and Public Contracts Division that vending machine goods received from out-of-State sources remain "in commerce" under the Jacksonville Paper rule until placed in the vending machines within the same State. Thus, employees engaged in stocking vending machines with such goods are engaged in individually covered work under the Fair Labor Standards Act.
>
> **Since vending route drivers engaged in transporting these products within the same State are engaged in transportation of property in interstate commerce, we will not assert that Section 13(b)(1) does not apply to such drivers.**

Id. (emphasis added).

Section 24c03 of the Department of Labor, Wage and Hour Division's Field Operations Handbook, states in its entirety:

13

> Vending machine servicemen who transport products between a warehouse and points within the same State, where such products have been procured from other States for stocking vending machines, are engaged in the transportation of property in interstate commerce until placed in the vending machines (see FOH 11v00). Thus, no assertion will be made that Section 13(b)(1) does not apply in such situations.

See Field Operations Handbook (DE# 100-2 at 7, 8/10/09) (emphasis in original).

The plaintiff acknowledges the persuasive value of the conclusions by the U.S. Department of Labor's Wage Hour Administrator and its Division's Field Operations Handbook regarding the applicability of the MCA to vending machine service. Nonetheless, the plaintiff urges the Court to temper their persuasive reasoning with a fact-specific analysis. See Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment at 9 (DE# 47, 7/30/12).

The plaintiff argues that the products of the defendant's key suppliers could sit in the in-state Florida warehouses for weeks or months at a time before being shipped to the defendant's to fulfill the defendant's orders: PepsiCo's products could sit in its Miami warehouse from a single week to eight weeks (four months); Performance Food Group, Inc.'s products can remain in its Kissimmee or Miami warehouse anywhere up to a year based upon the shelf life of the product, and The American Bottling Company's products can remain in their Miami distribution center for an approximate average of thirty days (a month) but never exceeding sixty days (two months).  See Lorenzo Affidavit at ¶ 6 (DE# 48-2, 7/30/12); Holland Affidavit at ¶ 6 DE# 48-3, 7/30/12);Rogers Affidavit at ¶ 6 DE# 48-4, 7/30/12).  The plaintiff further argues that these periods substantially exceed the temporary or brief pauses considered by Mena and Vitola, and that the product is removed from the continuous stream of interstate

14

commerce as considered by Walters.  See Plaintiff's Motion for Partial Summary Judgment at 5 (DE# 45, 7/25/12).

The affidavits of Lorenzo, Holland and Rogers fail to refute the facts in the record regarding the defendants' process of ordering, receiving goods and delivering goods and that most goods are produced and received from out-of-state vendors.  The affidavits provide generic information regarding the duration that general inventory remains in the vendors' respective Florida warehouses and fail to shed light on the amount of time the specific products ordered by the defendant remained in the vendor's warehouse inventory.  Mr. Holland's Affidavit states that Performance Food Group ships the product the day after the defendant places the order to the extent that the products are available for sale and stocked in its warehouse.  Holland Affidavit ¶ 6 (DE# 48-3, 7/30/12).  Mr. Rogers' Affidavit is silent as to when the product ships to the defendant from its in-state plants.  Rogers Affidavit  ¶ 6 (DE# 48-4, 7/30/12).  The defendants argue that the vendors' affidavits, although true, are incomplete and do not illustrate which of the products that the defendant orders actually remain for these periods of time.  Instead, the vendors' affidavits state the shelf life of each vendor's entire warehouse inventory, which is not a material fact for purposes of this motion for summary judgment.  The only relevant time periods are the ones for the specific products that the defendant ordered from each vendor.

In response, the defendants maintain that "[t]he majority of the products Best Nationals transports are manufactured, procured and shipped from outside the State of Florida.  See Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment ¶ 14 (DE# 48, 7/30/12); Aira Affidavit at ¶ 14; Rodriguez

15

Affidavit at ¶ 13; see also Aira Deposition at 33:15-25 (DE# 41-2, Ex. B, 7/16/12); Admissions Response at No. 6 (DE# 41-3, 7/16/12). Once orders were placed, the vendors ship to the defendant's warehouse via common carrier. Upon arrival, the vending items were unloaded into the defendants' warehouse and the route drivers then load their trucks with the items they need to fill their specific customers' vending machines. Typically, the products arrived within 1-2 days after the orders were placed. See W. Rodriguez Affidavit at ¶ 5 (DE# 41-1, 7/16/12). In his deposition, the plaintiff admitted that every week the defendant buys the vending products from its vendors. Aira Depo. at 33:15-17 (DE#41-2, 7/16/12) Upon receipt of the goods, the defendant promptly transports the goods to its customers, typically within one to two days, which the plaintiff does not dispute. Rodriguez Affidavit at ¶ 13 (DE# 41-1, 7/16/12) The defendant further argues that the perishable vending goods that the plaintiff transported only had short temporary pauses at warehouses, which kept the goods in a practical continuity of movement across state lines from the out-of-state shipment until the goods were placed in the vending machines by the plaintiff. Defendant's Reply Brief in Support of Motion for Final Summary Judgment [ECF No. 39] at 1 (DE# 51, 8/23/12). In Mena, the court relied on the fact that "property transported was perishable and usually of a reasonably short shelf-life" in finding that in-state warehouse served only as a temporary hub to facilitate interstate commerce. Mena, 352 Fed. Appx. at 307.

      The plaintiff's argument that the goods are not in interstate commerce is wholly inconsistent and contrary to his previous assertions and particularly to the allegations in his Amended Complaint. See Defendant's Response in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment [ECF No. 45] (DE# 54, 8/27/12). In his

Amended Complaint, the plaintiff alleges in pertinent part:

> Defendants business activities involve those to which the Fair Labor Standards Act applies.  Both the Defendants['] business and the Plaintiff's work for the Defendants affected interstate commerce for the relevant time period.  Plaintiff's work for the Defendants affected interstate commerce for the relevant time period because the products and materials that Plaintiff used on a constant and continual basis and that were supplied to him by the Defendants to use on the job moved through interstate commerce prior to and subsequent to Plaintiff's use of the same.  The Plaintiff's work for the Defendants was actually in and/or so closely related to the movement of commerce while he worked for the Defendants that the Fair Labor Standards Act applies to the Plaintiff's work for the Defendant.

See Amended Complaint ¶ 11 (DE# 7, 5/3/11).  The defendants argue that the plaintiff fails to provide any guidance to the Court as to what the alleged difference in standards when analyzing the issue of FLSA coverage and the MCA exemption.  The defendants rely on Walters, wherein the Eleventh Circuit acknowledged that although the MCA and FLSA do no have "identical conceptions" of what constitutes interstate commerce,

> [T]o make enforcement easier, the regulations assume that a movement that would constitute interstate commerce under the FLSA would likewise constitute interstate commerce under the MCA, 'except in those situations where the [Interstate Commerce] Commission has held or the Secretary of Transportation or the courts hold otherwise.

Walters, 575 F.3d 1221, 1229 (11th Cir. 2009).   As it found in Vitola, the Court is persuaded that the goods transported by the plaintiff were in interstate commerce until they came to rest in the vending machines.

### B.  Safety Operation of Vehicle Affected Interstate Commerce

Additionally, the plaintiff argues that the defendants cannot show that the plaintiff "affected safety operation in relation to class of work under 29 U.S.C. Section 782.2."  Plaintiff's Response at 7 (DE# 47, 7/30/12).  In his deposition, the plaintiff did not

17

dispute that he drives a truck on public highways.  See Defendants' Statement of Material Facts at ¶¶ 14, 22, 23; Aira Depo. at 27:4-19; 67:1-6 (DE# 41-2, 7/16/12).  In his deposition and his affidavit, the plaintiff admitted that he drove on public streets and highways.  See Aira Depo. at 23:10-14 (DE# 39, Ex. B); Aira Affidavit ¶ 22 (DE# 48-1, 7/30/12). Additionally, the plaintiff conceded that he checked his motor vehicle to ensure it was in safe working order as he acknowledged that he could not operate an unsafe vehicle.  Aira Depo. at 27:13-15.

However, in the Paragraph 23 of the Affidavit of Ricardo Aira dated July 30, 2012 (DE# 48-1, 7/30/12), the plaintiff states in pertinent part that he

> is without knowledge as to his employment operations and maintenance of his commercial motor vehicle affecting the safety of vehicles in interstate commerce as it calls for a legal conclusion... Plaintiff's job duties did not include insuring the safety of the work truck in which he traveled ....

Aira Affidavit ¶ 23 (DE# 48-1, 7/30/12).

In the Eleventh Circuit, the court is authorized to "disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003)."'When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" Id. (quoting Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir. 1984)(emphasis omitted)).

To the extent that his subsequent affidavit attempts to create a fact question on

18

the issue of the safe operation of the vehicle, it is a sham and will not be considered. See McCormick, 333 F.3d at 1240 n.7.

Under Mena and Vitola, the plaintiff's use of public highways as a route driver in relation to interstate commerce is sufficient to find that his activities affected the safety of operations of motor vehicles in the transportation of interstate commerce property. See 29 C.F.R. § 782.2(b)(2); Baez v. Wells Fargo Armored Serv. Corp., 938 F.2d 180, 181-82 (11th Cir. 1991). Thus, the Court finds that the plaintiff affected the safe operation of his motor vehicle while he transported vending goods on behalf of the defendants.

The defendants' motion for summary judgment based on the MCA exemption is granted and the plaintiff's motion for partial summary judgment is denied.

## **CONCLUSION**

Based on the foregoing, the Court finds that the defendants' motion for final summary judgment is **GRANTED** and the plaintiff's motion for partial summary judgment is **DENIED**. The defendants are entitled to final summary judgment on the plaintiffs' FLSA overtime claims alleged in Count I of the complaint based on the MCA exemption.

DONE AND ORDERED in Chambers, Miami, Florida, this **16th** day of October, 2012.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
All Counsel of Record